# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75503-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOEL EDWARD PAYNE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 26, 2018 |
| | ) | |

MANN, J. — Joel Payne was convicted of assault in the first degree while armed with a deadly weapon and malicious harassment for the stabbing of Randelle Atkins. Payne argues on appeal that (1) he was denied due process after the police returned Atkins's ring before it could be tested for DNA, (2) his right to a public trial was violated when the trial court held a brief sidebar that was not memorialized on the record, (3) his right to counsel was violated when the trial court allowed his court appointed attorney to withdraw before hearing Payne's motion for a new trial, and (4) the trial court erred in calculating his offender score when it considered his out-of-state convictions. We disagree that Payne was denied due process or the right to a public trial. However, because the trial court erred in allowing defense counsel to withdraw from representing

Payne during posttrial proceedings, and because the trial court erred in calculating Payne's offender score, we reverse and remand for new posttrial proceedings.

FACTS

On October 10, 2014, Atkins went shopping at the Southcenter Mall in Tukwila. After Atkins left the mall, he walked toward a convenience store. As he approached the store he passed a man, later identified as Payne, wearing a white mask. After leaving the convenience store, Atkins was approached by Payne who was now wearing the mask on top of his head. Atkins testified that Payne had bruises on his face and "looked kind of messed up." Payne began yelling racial slurs at Atkins and accused Atkins of robbing him. Atkins told Payne that he did not know him and attempted to walk past.

Atkins testified that he felt somebody was close to him and was about to touch him. Atkins raised his hands to create space and Payne stabbed him in the chest. Payne then ran away. Atkins testified that he only felt Payne touch him once. Atkins testified that his hands were full with shopping bags and that he did not swing at Payne. Atkins then sat on a bench and people came to assist him. An ambulance arrived and Atkins was transported to Valley Medical Hospital where they inserted a tube into his lungs to flush blood. Atkins remained in the hospital for two weeks.

Payne testified at trial that Atkins instigated the fight. Payne testified that he was walking alone at Southcenter Mall when he saw a black man wearing dark glasses that he believed had recently robbed him and stolen his notebook computer. Payne testified that the man, Atkins, had followed him out of a store, and when Payne turned around to face him, Atkins struck him twice in the face. Payne testified that he thought Atkins was

-2-

going to shoot him and therefore pulled out his pocket knife. Payne testified that Atkins laughed and tried to punch Payne again, and so Payne stabbed him in the chest before running away.

Witnesses to the attack mostly corroborated Atkins's description of events. Melisa Tinsley testified that she saw the fight break out and believed Payne was the aggressor, with Atkins appearing shocked and trying to defend himself. She called 911 after she saw Payne stab Atkins. Another witness, Mandeep Chawla, testified he saw the fight break out, and believed both parties threw a couple of punches, although none to the face.

Peter Mithia, a backroom associate at Sears, found Payne squatting inside a storage bin. Mithia said that Payne had "bruises, a swollen eye, and was bleeding from the mouth." Mithia informed the store's loss prevention officer who called the police. When the police discovered Payne, one of the officers tasered him and he fell to the floor. Payne began reaching into his pants pockets and kicking the officers. One of the officers struck him in the face repeatedly, one kicked him in the arm that was reaching into his pockets, and one sprayed pepper spray in his face. The officers were eventually able to place Payne in handcuffs and remove him from the storeroom.

The officers arrested Payne and searched him, finding two knives in his pockets. One of the knives appeared to have blood on the tip of the blade. Detectives Reed Lancaster and Eric DeVries processed the crime scene. At the scene, the detectives found Atkins's glasses and a ring that Atkins had worn on his pinky finger under a nearby bench. The police photographed the items, packaged them, and placed them into evidence. The day after the assault, Detective Ron Corrigan met with Atkins at the

hospital and took photographs of his hands, which did not reveal any injuries consistent with having punched Payne in the face.

Payne was charged by amended information with one count of assault in the first degree, with a sentencing enhancement alleging Payne was armed with a deadly weapon, and one count of malicious harassment for allegedly stabbing Atkins based on his perception of Atkins's race. At trial, the jury was instructed on self-defense. The jury convicted Payne as charged. Payne appeals.

## ANALYSIS

### Violation of Due Process

Payne argues first that the police violated his right to due process by returning Atkins's ring before it could be tested for DNA evidence. We disagree.

We review an alleged due process violation de novo. State v. Mullen, 171 Wn.2d 881, 893-94, 259 P.3d 158 (2011). Approximately one week after the assault took place, Atkins asked Detective DeVries, the lead detective on the case, if he could have his cellphone, eyeglasses, and ring returned to him. DeVries agreed to return the three items to Atkins because they had already been photographed and he determined that they did not appear to have any evidentiary value. Payne filed a pretrial motion to dismiss, alleging the State committed a due process violation by releasing the ring without Payne having the opportunity to have it tested for the presence of his DNA.[1] Payne argued that testing the ring may have shown Atkins did indeed strike Payne, thus

---

[1] The defense motion was initially a CrR 8.3(b) motion based on governmental mismanagement. At the hearing, both parties' argument addressed whether there was a due process violation by destruction of evidence, and the court's ruling was based on this argument. The State does not argue that the defense waived this issue.

supporting Payne's theory that he responded in self-defense. The trial court denied the motion.

"To comport with due process, the prosecution has a duty to disclose material exculpatory evidence to the defense and a related duty to preserve such evidence for use by the defense." State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). Due process does not, however, "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281 (1988). "Whether destruction of evidence constitutes a due process violation depends on the nature of the evidence and the motivation of law enforcement." State v. Groth, 163 Wn. App. 548, 557, 261 P.3d 183 (2011).

We look first to the nature of the evidence. If the State has failed to preserve "material exculpatory evidence," the criminal charges must be dismissed. Wittenbarger, 124 Wn.2d at 475. If the evidence is not "materially exculpatory," but is merely "potentially useful," failure to preserve the evidence only violates due process if the defendant can show the State acted in bad faith. State v. Burden, 104 Wn. App. 507, 512, 17 P.3d 1211 (2001). "Potentially useful" evidence is "'evidentiary material of which no more can be said then that it could have been subjected to tests, the results of which might have exonerated the defendant.'" Groth, 163 Wn. App. at 557 (quoting Youngblood, 488 U.S. at 57). The presence or absence of bad faith turns "'on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'" Groth, 163 Wn. App. at 558 (quoting Youngblood, 488 U.S. at 56).

Payne only argues the ring was "potentially useful" evidence. Even if we assume the ring was potentially useful,[2] Payne's due process claim fails because there is no evidence to demonstrate bad faith.

Payne argues DeVries acted in bad faith because (1) he was not following any established procedure to dispose of evidence, (2) the detectives all knew the importance of preserving evidence, and (3) Devries decision to return the evidence was solely based on his own determination that Atkins's cellphone, glasses, and ring were not exculpatory. None of Payne's arguments rise to the level of bad faith.

This court addressed similar arguments in Groth. In Groth, after the murder investigation "went cold," a sergeant ordered destruction of the majority of the physical evidence. Groth, 163 Wn. App. at 554. At trial, someone testified that the evidence would usually have been preserved and that there was enough storage space for the evidence. Groth, 163 Wn. App. at 559. While this court acknowledged that it was "unclear why the evidence was destroyed," we still found there was "no indication that the sheriff's office knew of any exculpatory aspect of the evidence or that its destruction in 1987 was improperly motivated." Groth, 163 Wn. App. at 559. We specifically rejected the argument that "the destruction of evidence that is contrary to policy must demonstrate bad faith," acknowledging that Groth had not even demonstrated any explicit regulation or policy that had been violated. Groth, 163 Wn. App. at 559.

---

[2] The State argues that Payne failed to meet the threshold showing that the ring was even "potentially useful." The State relies on State v. Valdez, 158 Wn. App. 626, 629, 241 P.3d 1288 (2010), which held the evidence was not "materially exculpatory" because the evidence "had little or no exculpatory value." Valdez, 158 Wn. App. at 629. However, the court in Valdez did not address whether the evidence was "potentially useful" or whether the State acted in bad faith. Thus, Valdez is not instructive.

Here, as in <u>Groth</u>, Payne failed to present evidence that DeVries acted in bad faith in returning the ring. There is no evidence that DeVries knew the ring was exculpatory when he released it. Defense counsel had not requested the ring at the time, and DeVries testified that he believed the ring had no evidentiary value. Payne has not demonstrated that DeVries violated any explicit regulation or policy in choosing to return the ring, or actively misled the defense.[3] Because there is no evidence that DeVries acted in bad faith, the return of Atkins's ring did not violate Payne's right to due process.

<em>Public Trial Right</em>

Payne argues next that his right to a public trial was violated when the trial court held a brief sidebar that was not memorialized on the record. We disagree.

Whether a trial court has violated the defendant's public trial right is a question of law we review de novo. <u>State v. Brightman</u>, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).

The right to a public trial is guaranteed by article I, sections 10 and 22 of the Washington State Constitution. <u>State v. Love</u>, 183 Wn.2d 598, 605, 354 P.3d 841 (2015), <u>cert. denied</u>, 136 S. Ct. 1524 (2016). However "[t]he right to public trial is not absolute." <u>State v. Wise</u>, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). "[W]hile openness is a hallmark of our judicial process, there are other rights and considerations that must sometimes be served by limiting public access to a trial." <u>Wise</u>, 176 Wn.2d at 9. To balance the public trial right and other competing rights and interests, the court applies a three-step analysis: (1) whether the public trial right attaches to the proceeding at

---

[3] <u>See</u> <u>United States v. Cooper</u>, 983 F.2d 928, 930-31 (9th Cir. 1993).

issue, (2) whether the courtroom was closed, and (3) whether the closure was justified. Love, 183 Wn.2d at 605; Wise, 176 Wn.2d at 9. "The appellant carries the burden on the first two steps; the proponent of the closure carries the third." Love, 183 Wn.2d at 605.

Washington courts have adopted the experience and logic test to determine whether the proceeding at issue implicates the public trial right. State v. Smith, 181 Wn.2d 508, 514, 334 P.3d 1049 (2014). "[T]he experience prong, asks 'whether the place and process have historically been open to the press and general public.'" State v. Sublett, 176 Wn.2d 58, 73, 292 P.3d 715 (2012) (quoting Press-Enter. Co. v. Superior Court, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). The logic prong asks "whether public access plays a significant positive role in the functioning of the particular process in question." Sublett, 176 Wn.2d at 73 (quoting Press, 478 U.S. at 8). If the public trial right attaches, the court must apply the weighing test described in State v. Bone-Club, 128 Wn.2d 254, 258, 906 P.2d 325 (1995), before the proceeding may be closed to the public. Sublett, 176 Wn.2d at 73.

The issue in this case is whether the public trial right attached to the sidebar conference and whether the sidebar constituted a closure of the courtroom. The sidebar occurred during the State's direct examination of Detective Corrigan. The State asked Corrigan,

> [STATE]: Detective, you additional (sic) said that on your second visit to the hospital to see Mr. Atkins, you also took some photographs of his hands. Why did you do that?
> [CORRIGAN]: I talked to Detective DeVries or another detective and they told me that there was—
> [DEFENSE]: Your Honor, could see (sic) have a discussion outside the presence of the jury before he answers this line of inquiry?

[COURT]: Is that something you and counsel can confer about briefly when you do that? Just talk for a second.

PAUSE

[STATE]: I don't believe we can.

SIDEBAR CONFERENCE

[STATE]: Detective Corrigan, let me ask a specific question. In this regard, why did you feel it was important to take pictures of Mr. Atkins' hands?

[CORRIGAN]: Because I received information that there may have been a fight or a struggle at the scene and I wanted to check his hands to see if there was any injuries and to document his hands and so I took photographs of his hands.

[STATE]: So that being said, I'm going to show you some photos.

[CORRIGAN]: Okay.

[STATE]: Are these the photos that you took?

[CLERK]: State's Exhibits 61 through 64 are marked.

In Smith, our Supreme Court held that sidebar conferences are not proceedings implicating the public trial right as they failed both the experience and the logic prong of the proceeding test. 181 Wn.2d at 516-20. The court reasoned, "[s]idebars have traditionally been held outside the hearing of both the jury and the public. Because allowing the public to 'intrude upon the huddle' would add nothing positive to sidebars in our courts, we hold that a sidebar conference, even if held outside the courtroom, does not implicate Washington's public trial right." Smith, 181 Wn.2d at 519. The court's holding was limited to "proper sidebars," dealing with "mundane issues implicating little public interest." Smith, 181 Wn.2d at 516-19 (citing Wise, 176 Wn.2d at 5). "Evidentiary rulings that are the subject of traditional sidebars do not invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness." Smith, 181 Wn.2d at 518.

In a footnote, however, the Supreme Court also stated the determination of "[w]hether the event in question is actually a sidebar is part of the experience prong

inquiry and is not subject to the old legal-factual test." Smith, 181 Wn.2d at 516, n.10. In order to "avoid implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and must either be on the record or be promptly memorialized in the record." Smith, 181 Wn.2d at 516, n.10. While this clarification was limited to a footnote, it was later affirmed in State v. Whitlock, 188 Wn.2d 511, 520, 396 P.3d 310 (2017).

Payne argues that because the trial court never memorialized the sidebar on the record it was improper and his public trial right was violated. We agree that under Smith, the court is to memorialize sidebars on the record to best avoid implicating the right to a public trial. However, the appellant still carries the burden of proving that the sidebar in the case is one that implicated the public trial right. And, in this case, the trial court's failure to memorialize the sidebar discussion, by itself, does not carry Payne's burden of proving the sidebar was improper and violated his right to a public trial.

Division Three of this court considered a similar issue in State v. Crowder, 196 Wn. App. 861, 867, 385 P.3d 275 (2016), review denied, 188 Wn.2d 1003, 393 P.3d 361 (2017). In Crowder, the trial court engaged counsel in an unrecorded sidebar during a juror challenge before entering its formal ruling. The appellant argued that this unrecorded sidebar violated his public trial right. There, as is here, the substance of the sidebar was never recorded. Nonetheless, the court held, "Crowder's public trial argument would have traction only if he could show something substantive occurred during the off-the-record sidebar." Crowder, 196 Wn. App. at 867 (emphasis added). The State argued "the sidebar discussion simply addressed non-substantive procedural matters regarding the trial court's motions practice" and "Crowder [did] not contest this

proffer and nothing in the record suggests it is inaccurate." Crowder, 196 Wn. App. at 867. The court explained that it is the appellant's burden to establish "the sidebar in his case falls outside the general rule," and that Crowder failed to meet this burden.

We likewise hold Payne failed to meet his burden of demonstrating the sidebar in his case "falls outside the general rule." The State argues the sidebar in this case appears to be related to evidentiary issues. The record supports this claim and Payne provides no evidence to the contrary.

Here, the sidebar arose as Detective Corrigan stated "I talked to Detective DeVries or another detective and they told me that there was . . ." Defense counsel then requested to "have a discussion outside the presence of the jury before he answers this line of inquiry." Based on the context, Payne was likely concerned that this line of testimony was going to incorporate hearsay statements[4] made by the other detectives, and wanted to ensure those statements would not be admitted. After the sidebar, the State rephrased the question in a manner that avoided any hearsay statements of nontestifying persons. Because Payne provides no evidence supporting his assertion that the sidebar considered topics outside those included in a "proper sidebar" dealing with "mundane issues," we hold that Payne has failed to meet his burden. Smith, 181 Wn.2d at 516-19.

Furthermore, it is notable that it was defense counsel who requested the discussion outside the presence of the jury, requiring the sidebar. But defense counsel never requested to have the discussion memorialized on the record or made any other

---

[4] "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. ER 801.

statement about the sidebar discussion. Defense counsel had every reason to know whether the sidebar had expanded beyond traditional sidebar topics and could implicate the public trial right. It is well established that under the invited error doctrine a party is precluded from setting up an error at trial and then complaining of it on appeal, even when that error is of constitutional magnitude. State v. McLoyd, 87 Wn. App. 66, 69, 939 P.2d 1255 (1997), aff'd sub nom. State v. Studd, 137 Wn.2d 533, 973 P.2d 1049 (1999).

*Right to Counsel*

Payne argues next that he received ineffective assistance of counsel during posttrial motions and sentencing. This is so, Payne contends, because he was denied substitute counsel after his defense counsel was permitted to withdraw from representation after filing an Anders motion.[5] We agree.

A.     Additional Procedural Facts

After the verdict, and before the sentencing hearing, the trial court appointed new defense counsel to represent Payne. After defense counsel was appointed, he informed the court that Payne had expressed the desire to file a CrR 7.5 motion for a new trial, noting that he may need to file an Anders brief if he believed it was frivolous. Soon thereafter defense counsel filed a "Motion to Withdraw Pursuant to Anders v. California" in which he also cited RAP 15.2(i).[6] Counsel's stated grounds were that "RAP 15.2(i) provides for the withdrawal of counsel on appeal where the attorney can find no basis for a good faith argument on review. In accordance with the due process

---

[5] Anders v. State of Cal., 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).
[6] Defense counsel citied RAP 15.2(h) but clearly meant RAP 15.2(i).

requirements of Anders v. California, supra, McCoy v. Wisconsin, 486 U.S. 429, [108 S. Ct. 1895, 100 L. Ed. 2d 440] (1988), and State v. Theobald, 78 Wn.2d 184, 185, 470 P.2d 188 (1970)."

The trial court held the scheduled hearing for the motion for a new trial and addressed counsel's motion. At the hearing, the court informed Payne of the motion and asked if he wanted to "proceed with that motion on [his] own?" After being informed that he would not be given new counsel for the motion, Payne eventually agreed to proceeding with the motion pro se, as long as he was given more time to prepare the motion. Payne also stated he did not mind having defense counsel return as his attorney for sentencing.

The court granted defense counsel's motion to withdraw for the purposes of the motion for a new trial, but stated he would return to represent Payne for sentencing.

At the motion for a new trial, the trial court noted that defense counsel was not present, even as standby counsel. The trial court stated, "I'm a little concerned, very concerned that [defense counsel] isn't here because of a couple of things. He, of course, cited the appellate rule, as opposed to the motion for reconsideration or a motion for new trial at this trial level. Be that as it may, Mr. Payne, as I said, I have read your material and it seems like you know what your responsibilities are." The trial court agreed to hear the motion, informing Payne that he could talk to defense counsel "about whether or not you want to ask for reconsideration." The trial court then denied Payne's motion. Defense counsel returned the next day to represent Payne at the sentencing hearing. Payne does not cite error to the trial court's decision on the motion.

B.    Right to Counsel

"The right to counsel is constitutionally guaranteed at all critical stages of a criminal proceeding." State v. Robinson, 153 Wn.2d 689, 694, 107 P.3d 90 (2005); CR 3.1(b)(2). The motion for a new trial is a posttrial, pre-appeal proceeding, in which the court may grant a new trial based on certain circumstances "when it affirmatively appears that a substantial right of the defendant was materially affected." CrR 7.5(a). While there is no Washington case on point, the federal circuit courts that have addressed whether the time period for making a motion for new trial is a critical stage have concluded that it is. See McAfee v. Thaler, 630 F.3d 383, 391 (5th Cir. 2011); United States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013).[7] The State concedes that this time period is likely a critical stage in the trial. In accordance with the overwhelming authority, we hold a posttrial motion is a critical stage of the criminal proceeding.

The next issue is whether defense counsel could properly withdraw under Anders. Anders established the constitutional minimums that must be met before appellate counsel may decline to pursue an appeal on the grounds that it is frivolous. 386 U.S. at 744. Washington has codified this rule though RAP 18.3, which allows appellate counsel appointed in a criminal case to file a request to withdraw, known as an Anders brief, if they can find no basis for a good faith appeal. RAP 18.3(a)(2). "In

---

[7] The Ninth Circuit also held "every federal circuit that has addressed whether a post-trial, pre-appeal motion for a new trial constitutes a 'critical stage' has concluded that it does." Rodgers v. Marshall, 678 F.3d 1149, 1158 (9th Cir. 2012). That decision was reversed by the United States Supreme Court in Marshall v. Rodgers, 569 U.S. 58, 61, 133 S. Ct. 1446, 185 L. Ed. 2d 540 (2013), although the court declined to address the issue of whether "a post-trial, preappeal motion for a new trial is a critical stage of the prosecution," simply stating "For purposes of analysis here, it will be assumed, without so holding, that it is."

such a situation the court may relieve counsel and either dismiss the appeal or leave the indigent to proceed pro se; however, the [appellate] court must first ascertain that the appeal is in fact frivolous lest it deny the defendant his constitutional right to appeal." State v. Hairston, 133 Wn.2d 534, 536-37, 946 P.2d 397(1997). It is undisputed that Anders only considers the withdrawal of appellate counsel. Anders, 386 U.S. at 744.

Division Three of this court considered a similar case where trial counsel filed an Anders brief seeking to withdraw as counsel because he could not "find any assignment of error that would support a meritorious challenge to the entry of the guilty plea." State v. Chavez, 162 Wn. App. 431, 436, 257 P.3d 1114 (2011). The Chavez court rejected the use of an Anders brief at the trial court, holding there is "no precedent or other authority" that permits the use of an Anders brief to withdraw from representation at the trial court. Chavez, 162 Wn. App. at 440. We agree with Chavez that there is no case or authority that permits trial counsel to withdraw using an Anders brief. Accordingly, allowing defense counsel to withdraw in this case was error.

The State concedes trial counsel erred in filing an Anders brief, but argues Payne waived his right to counsel. We disagree. A trial court must establish that a defendant, in choosing to proceed pro se, makes a knowing and intelligent waiver of the right to counsel. State v. Bebb, 108 Wn.2d 515, 525, 740 P.2d 829 (1987). The defendant's request must be stated unequivocally. State v. DeWeese, 117 Wn.2d 369, 377, 816 P.2d 1 (1991). In this case, Payne unmistakably did not request to proceed without counsel. Although Payne stated he was willing to proceed pro se, he only did so because he was told that his counsel was withdrawing from representation and that he would not be appointed new counsel for the motion.

-15-

While appointed defense counsel is not necessarily required to file all motions requested by his client, counsel may not wholly withdraw from representation during a critical stage of trial.[8] "The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." United States v. Cronic, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047, 80 L. Ed. 2d 657 (1984); see also State v. Silva, 108 Wn. App. 536, 542, 31 P.3d 729 (2001). We hold Payne was denied his Sixth Amendment right to counsel during the motion for a new trial and remand for new posttrial proceedings with appointed counsel present.

Payne also argues that he was denied his right to the effective assistance of counsel at sentencing because his defense counsel had a conflict of interest that precluded all further representation. Because we must remand for resentencing on other grounds, we do not address this issue.

*Offender Score*

Payne argues the trial court erred in calculating his offender score. Sentencing courts calculate a defendant's offender score based on prior convictions. RCW 9.94A.525(3). Prior out-of-state and federal convictions are classified "according to the comparable offense definitions and sentences provided by Washington law." RCW

---

[8] "'General agreement exists that the decisions as to guilty plea, jury trial, appeal, defendant's presence at trial, and the defendant testifying are for the defendant, and that decisions on a substantially larger group of matters, such as objecting to inadmissible evidence, are for counsel.'" In re Pers. Restraint of Stenson, 142 Wn.2d 710, 735, 16 P.3d 1 (2001)(quoting 3 WAYNE R. LaFAVE, JEROLD H. ISRAEL & NANCY J. KING, CRIMINAL PROCEDURE § 11.6(a) at 603 (2d ed.1999)). "The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client.'" Stenson, 142 Wn.2d at 736; (citing 1 ABA, STANDARDS FOR CRIMINAL JUSTICE std. 4-5.2(b) (2d ed. Supp. 1986)); State v. Grier, 171 Wn.2d 17, 31, 246 P.3d 1260 (2011).

9.94A.525(3); State v. Ross, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004). The State bears the burden of proving, by a preponderance of the evidence, the existence, and comparability, of a defendant's prior out-of-state conviction. Ross, 152 Wn.2d at 230. We review the sentencing court's calculation of the offender score de novo. State v. Roche, 75 Wn. App. 500, 513, 878 P.2d 497 (1994). "[T]he remedy for a miscalculated offender score is resentencing using a correct offender score." State v. Wilson, 170 Wn.2d 682, 691, 244 P.3d 950 (2010) (quoting Ross, 152 Wn.2d at 228).

The State concedes to both of Payne's claimed errors. First, the State concedes that a federal bank robbery is not comparable to a violent offense in Washington, as such, the trial court improperly counted Payne's past federal bank robbery charge as two points. Second, the State concedes the Oregon conviction for unauthorized use of a motor vehicle is not legally or factually comparable to Washington's offense of taking a motor vehicle without the owner's permission in the second degree. Accordingly, we reverse and remand for resentencing.

Although the State acknowledges that remand is required, the State asks this court to determine whether the conviction for "unauthorized use of a motor vehicle" is comparable to Washington's felony possession of stolen property. We hold this issue is properly reserved for the trial court on remand.

While a challenge to the sentencing court's existing classification of an out-of-state conviction is reviewed de novo, the proper forum for a new classification of out-of-state convictions is at the sentencing hearing. State v. Beals, 100 Wn. App. 189, 196-97, 997 P.2d 941 (2000). The sentencing hearing is the forum in which "the State can present necessary documentary evidence, the defendant can refute the State's

evidence and arguments, and the court can then engage in the required comparison on the record to determine if the State met its burden of proof." Beals, 100 Wn. App. at 196-97. At resentencing, the State may also offer its argument that the federal conviction may be counted as a generic federal offense and scored as one point, pursuant to RCW 9.94A.525(3) and RCW 9.94A.530(2).

### Statement of Additional Grounds

Payne submitted a statement of additional grounds in which he raises challenges to witness credibility, the jury instructions, the State's disclosure of evidence, and the effectiveness of his counsel.

A.    Credibility Determinations

First, Payne broadly argues he was denied his right to a fair trial by attacking the credibility of Atkins and various other witnesses. While Payne may dispute Atkins' credibility or version of the facts, matters pertaining to the credibility of witnesses, conflicting testimony, and the persuasiveness of the evidence are the exclusive province of the trier of fact. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); State v. Stewart, 141 Wn. App. 791, 795, 174 P.3d 111 (2007).

B.    Jury Instructions

Payne next challenges several of the jury instructions. First, Payne contends that the assault instructions were confusing because "read alone" they did not state the stabbing can be legal if done in self-defense. However, the jury was provided a separate instruction on self-defense. To satisfy the constitutional demands of a fair trial, the jury instructions, when read as a whole, must correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present his theory of the case.

-18-

State v. Mills, 154 Wn.2d 1, 7, 109 P.3d 415 (2005). Payne does not challenge the self-defense instruction, thus the instructions, read as a whole, informed the jury that self-defense was an available defense in this case.

Payne argues next that he should have received a lesser included offense instruction, although he did not request the lesser included instruction. Under RAP 2.5(a), a claim on appeal is waived if the party failed to make the argument at trial, unless the claim is of a manifest constitutional error. RAP 2.5(a). The failure to instruct on a lesser included offense does not constitute manifest constitutional error. See State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009); RAP 2.5(a). Payne has waived this claim.

C.    Prosecutorial Misconduct

Payne argues the prosecutor committed misconduct by withholding evidence. "[W]ithholding of evidence violates due process if the evidence is favorable to a defendant and material to his case." State v. Boyd, 29 Wn. App. 584, 587, 629 P.2d 930 (1981). Payne contends the prosecutor withheld video evidence and did not timely provide evidence of the expert's testimony, however, there is nothing on the record to support either contention. Instead, Payne's argument relies entirely on "facts or evidence not in the record," in fact, Payne admits he has no evidence that the video even exists. Such arguments are properly raised through a personal restraint petition, not a statement of additional grounds, and we do not address them. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

D.    Ineffective Assistance of Trial Counsel

Lastly, Payne briefly argues he received ineffective assistance of counsel, generally challenging trial counsel's effectiveness during direct and cross-examination and her ability to retrieve the necessary evidence.  The burden is on a defendant alleging ineffective assistance of counsel to show defense counsel's objectively deficient performance prejudiced him, based on the record established in the proceedings below. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).  We strongly presume counsel was effective.  McFarland, 127 Wn.2d at 336.  Decisions to call witnesses or ask certain questions are generally tactical or concern matters outside the record and will not support an ineffective assistance claim.  State v. Jones, 33 Wn. App. 865, 872, 658 P.2d 1262 (1983).

Here, Payne has failed to point to any specific act by defense counsel that he believed was deficient.  Although a defendant is not required to cite to the record or authority in his SAG, "he must still 'inform the court of the nature and occurrence of [the] alleged errors' and this court is not required to search the record to find support for the defendant's claims." State v. Meneses, 149 Wn. App. 707, 716, 205 P.3d 916 (2009), as amended (Apr. 13, 2009), aff'd in part, 169 Wn.2d 586, 238 P.3d 495 (2010).  The other claims, that defense counsel failed to acquire the unsubstantiated video evidence, again relies on evidence outside of the record and thus cannot be considered on a direct appeal.

We reverse and remand for posttrial proceedings.

_____ Mann, J.

WE CONCUR:

_____ Trickey, ACJ

_____ Leach, J.