**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49926-6-II |
| Respondent, | |
| v. | |
| DANNY RAY POTTS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Danny Ray Potts appeals his convictions for possession of methamphetamine and heroin with intent to deliver and possession of MDMA (ecstasy) and benzodiazepine. He contends that the search warrant in this case was stale and not supported by probable cause and that the police executing the warrant violated the knock and announce rule. He also contends that he received ineffective assistance of counsel, evidence was insufficient that he intended to deliver methamphetamine or heroin, and the trial court erred by admitting an untested substance into evidence.[1] We reject all of Potts's arguments and affirm his convictions.

---

[1] Potts also asks us to waive appellate costs. Pursuant to RAP 14.2, we will defer to the commissioner if the State files a cost bill and Potts objects.

FACTS

I.    SEARCH AND ARREST

On November 12, 2015, Longview police executed a search warrant for drugs at Potts's residence. Detective Seth Libbey knocked on the door and then shouted three times, "Longview police, search warrant." 1 Report of Proceedings (RP) at 45. He heard movement inside the residence, but did not get a response to his announcements. About fifteen seconds after the initial announcement, Sergeant Mark Langlois ordered Detective Brian Durbin to use a battering ram on the door. After three unsuccessful strikes with the ram, Potts opened the door and the police entered the residence. Potts, who stood several feet from the front door, never heard a knock or an announcement until after the third hit with the ram. Potts's nephew was also in the home at the time of the search. He estimated about a minute elapsed between when officers first shouted and when they entered the residence.

In their search of the residence, police found three bags in the toilet bowl. One bag contained methamphetamine and one contained heroin. The third bag contained two smaller bags, at least one of which contained methamphetamine.

Police also found a scale with white crystal residue, numerous small plastic bags, and $150 cash in Potts's bedroom. They found another $450 cash on Potts's person. Also in the bedroom, they found an ecstasy pill and a benzodiazepine pill.

Potts told the detectives that "anything found in here is mine." 3 RP at 428. A detective testified that Potts also said the police "must have deliveries on him to be there in the first place." 2 RP at 250. Potts denied admitting to drug trafficking or delivering.

Potts and his girlfriend both testified that all the drugs in the house were for their personal use and they preferred to buy infrequently in large quantities. Potts's girlfriend had tried to flush down the toilet an ounce of methamphetamine and two ounces of heroin when she heard the police coming.

A.    CONFIDENTIAL INFORMANT

To obtain the search warrant, Libbey executed an affidavit on November 6, 2015. Libbey stated that he had been contacted by a confidential informant (CI) he identified as X and that X had informed him that he or she had seen methamphetamine at Potts's residence. Libbey stated that X had used drugs in the past, including heroin and methamphetamine, and was familiar with illicit drugs and their packaging as well as how drug transactions were arranged and completed. X had additionally performed one "controlled buy" previously in which X had purchased a controlled substance working for Longview police and had provided information for two previous successful search warrants.

In the seventy-two hours prior to Libbey executing the affidavit, X went to Potts's residence at the direction of Longview police. In the residence, X observed approximately one quarter of an ounce of methamphetamine in a plastic Ziploc bag under Potts's control. Potts indicated to X that the substance in the bag was methamphetamine. X also observed a pipe that contained methamphetamine residue.

Pursuant to the affidavit, a judge authorized a warrant to search Potts's residence and person for methamphetamine and various other drug paraphernalia. Six days later, officers executed the warrant.

II.     CRIMINAL CHARGES AND TRIAL

The State charged Potts with two counts of possession of a controlled substance with intent to deliver, one for methamphetamine and one for heroin, and two counts of possession of a controlled substance, one for ecstasy and one for benzodiazepine.

Potts moved to suppress all contraband evidence seized during the search of his residence. He argued that the police violated the knock and announce rule and that the warrant was stale. The trial court concluded that the police properly knocked and announced their presence and that the warrant was not stale because it was executed within ten days of issuance.

In November 2016, the case proceeded to a jury trial. During the trial, John Dunn, a forensic scientist from the Washington State Patrol testified that he tested and weighed the contents of many of the bags police seized from Potts's residence.

The court admitted into evidence four exhibits consisting of the substances Dunn tested. Potts objected to the admission of the bag seized from Potts's toilet that contained the two smaller bags. He argued that Dunn had weighed and tested the contents of only one of the two smaller bags.

Dunn testified that both bags contained "a crystalline material" and that the bag he tested contained 13.6 grams of methamphetamine. 3 RP at 390. He did not testify about the contents or weight of the untested bag, but the court overruled the objection and admitted it into evidence as a part of the same exhibit. The trial court observed that the two bags were both found within one larger bag and were "of similar size" and "similar makeup." 3 RP at 376. The court ruled that it

would be up to the jury to decide if the substance in the untested bag was also methamphetamine. Potts's girlfriend testified that she had tried to flush down the toilet three bags containing methamphetamine and heroin. She confirmed she had three bags containing an ounce of methamphetamine and two ounces of heroin and that she had tried to flush them.

The jury found Potts guilty on all counts. Potts appeals.

## ANALYSIS

I.     PROBABLE CAUSE FOR SEARCH WARRANT

    A.      CONFIDENTIAL INFORMANT

Potts contends that the search warrant affidavit did not establish probable cause. He claims that the affidavit failed to establish both the basis of knowledge and the veracity of the CI. He also contends that he received ineffective assistance of counsel because his trial counsel did not raise this issue before the trial court. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-34; *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Representation is deficient if, after considering all the circumstances, the performance falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 446 U.S. at 688). Prejudice exists if there is a reasonable

probability that, except for counsel's errors, the results of the proceedings would have differed. *Grier*, 171 Wn.2d at 34. If either prong is not satisfied, the defendant's claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

A defendant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

To address both elements of ineffective assistance, we look to the merits of the underlying claim that the CI lacked a basis of knowledge and veracity. If that claim would have failed before the trial court, Potts's trial counsel was not deficient for failing to raise it and he cannot show prejudice.

A search warrant should only be issued upon a determination of probable cause based on facts and circumstances sufficient to establish a reasonable inference that criminal activity is occurring or contraband exists at a certain location. *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002). We accord great deference to a magistrate's decision to grant a search warrant and view the supporting affidavit in the light of common sense. *Vickers*, 148 Wn.2d at 108. The trial court's assessment of probable cause is a legal conclusion that we review de novo. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). However, we review a decision whether to issue a warrant for abuse of discretion. *Vickers*, 148 Wn.2d at 108.

To establish probable cause for issuance of a search warrant based on a tip from a CI, "the affidavit must demonstrate the informant's (1) basis of knowledge and (2) veracity." *Vickers*, 148 Wn.2d at 112; *see State v. Jackson*, 102 Wn.2d 432, 433, 688 P.2d 136 (1984) (citing *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S.

6

410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969)). Potts argues that the affidavit in this case does not satisfy either of these requirements.

To establish a CI's basis of knowledge, the affidavit must provide "a showing that the information provided by the informant was based upon personal knowledge." *Vickers*, 148 Wn.2d at 112. The affidavit must contain "'sufficient facts to convince a reasonable person of the probability the defendant is engaged in criminal activity and that evidence of criminal activity can be found at the place to be searched.'" *State v. Ollivier*, 178 Wn.2d 813, 849, 312 P.3d 1 (2013) (quoting *State v. Lyons*, 174 Wn.2d 354, 359 & n.2, 275 P.3d 314 (2012)). It is not necessary to show that the CI "actually saw" contraband, so long as the CI had "personal knowledge" of the facts asserted. *Vickers*, 148 Wn.2d at 113. *Vickers* observed that this requirement was satisfied in cases where the "the informant personally saw the drugs in the defendant's possession or was involved in purchasing drugs." 148 Wn.2d at 113 (citing *State v. Wolken*, 103 Wn.2d 823, 827, 700 P.2d 319 (1985); *State v. Gunwall*, 106 Wn.2d 54, 71, 720 P.2d 808 (1986)).

To establish an informant's veracity, the affidavit must "evaluate the informant's 'track record'" and whether the informant has provided accurate information to police in the past. *Jackson*, 102 Wn.2d at 437. This prong is satisfied by either showing the credibility of the informant, or by establishing that the facts and circumstances support an inference that the informant is telling the truth. *State v. Munoz Garcia*, 140 Wn. App. 609, 619, 166 P.3d 848 (2007). A successful controlled buy may establish the reliability of a CI. *State v. Casto*, 39 Wn. App. 229, 234, 692 P.2d 890 (1984).

A heightened demonstration of credibility is required for CI's whose identity are known to police but not revealed to the magistrate. *State v. Ibarra*, 61 Wn. App. 695, 700, 812 P.2d 114 (1991). In such cases, "the affidavit must contain 'background facts to support a reasonable

7

inference that the information is credible and without motive to falsify.'" *State v. Atchley*, 142 Wn. App. 147, 162, 173 P.3d 323 (2007) (quoting *State v. Cole*, 128 Wn.2d 262, 287-88, 906 P.2d 925 (1995)).

In this case, the CI personally saw at Potts's residence and in Potts's control a substance he or she knew to be methamphetamine and a methamphetamine pipe. These facts are sufficient to demonstrate the CI's basis of knowledge. Potts contends that "[n]o details are given regarding the relationship between [the CI] and [Potts]" or "why [the CI] was invited to the house" and maintains that there is no allegation of methamphetamine distribution. Br. of Appellant at 21. None of this information is necessary to demonstrate the CI's basis of knowledge.

As to the CI's veracity, he or she had performed one controlled buy for the Longview police and had provided information for two previous drug search warrants, in both of which the CI's information had been confirmed. The affidavit also explained that the CI was working with police in exchange for leniency in a criminal matter. Because of the CI's prior reliable information, his or her veracity was demonstrated and the magistrate did not abuse its discretion by finding X sufficiently reliable for a finding of probable cause.

Because Potts has not shown that the search warrant affidavit in this case failed to establish the CI's basis of knowledge or veracity, he has not shown that his trial counsel was deficient for failing to raise this issue.

B.    STALENESS

Potts contends that the information obtained from the CI between November 3 and 6 was stale by the time police executed the search warrant on November 12. He claims that there was no reason to suspect the methamphetamine to still be at Potts's residence ten to twelve days[2] after the CI originally visited the residence. We reject his argument.

A delay in executing a search warrant may render the magistrate's probable cause determination stale. *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). "Common sense is the test for staleness of information in a search warrant affidavit." *Maddox*, 152 Wn.2d at 505. To evaluate whether the facts underlying a search warrant are stale, we look at the totality of the circumstances, including the length of time between issuance and execution of the warrant and the nature and scope of the criminal activity. *Maddox*, 152 Wn.2d at 506. Probable cause may also grow stale based on the time between a CI's observations of criminal activity and the presentation of the affidavit to the magistrate. *State v. Lyons*, 174 Wn.2d 354, 360-61, 275 P.3d 314 (2012).

CrR 2.3(c) requires that search warrants require officers to search the specific place "within a specified period of time not to exceed 10 days."

The CI observed a quarter ounce, or about seven grams,[3] of methamphetamine and a pipe with methamphetamine residue at Potts's residence. Six to nine days later, officers served the warrant there. Less than ten days elapsed from X's observation until officers served the warrant.

---

[2] Potts reaches this figure of "ten to twelve days" by calculating "[n]ine days from November 6 to November 12, 2015, and an additional period of a maximum of 72 hours described in the affidavit." Br. of Appellant at 24-25 n.4. This calculation appears to be a mathematical error as there are six days between November 6 and 12, making the total elapsed time from the CI's visit to execution of the warrant between six and nine days.

[3] One detective testified that a "typical user amount" of methamphetamine is about a gram or less. 2RP at 286.

It was reasonable for the officers serving the warrant to conclude that probable cause continued to exist that methamphetamine would be at Potts's residence. Even if Potts had consumed or transferred the methamphetamine, probable cause would have continued to exist regarding the pipe. Potts has not shown that the search warrant was stale when police executed it.

II.    KNOCK AND ANNOUNCE REQUIREMENT

Potts contends that the trial court erred by denying his motion to suppress evidence in violation of the knock and announce rule. He claims that the facts from the suppression hearing "show an incorrectly performed entry into the house" and that if officers announced their presence at all, it was not until they began to use the ram. Br. of Appellant at 30. We disagree.

"The knock and announce rule has both constitutional and statutory components. *State v. Ortiz*, 196 Wn. App. 301, 307, 383 P.3d 586 (2016). Both the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution require that "a nonconsensual entry by the police 'be preceded by an announcement of identity and purpose on the part of the officers.'" *State v. Coyle*, 95 Wn.2d 1, 6, 621 P.2d 1256 (1980) (quoting *State v. Young*, 76 Wn.2d 212, 214, 455 P.2d 595 (1969)); *Ortiz*, 196 Wn. App. at 307.

RCW 10.31.040 codifies these requirements. It allows officers making an arrest to "break open any outer or inner door, or windows of a dwelling house or other building" if "after notice of [their] office and purpose, [they] be refused admittance." RCW 10.31.040. In order to comply with this "knock and announce" rule, police officers "prior to a nonconsensual entry must (1)

announce their identity, (2) announce their purpose, (3) demand admittance, (4) announce the purpose of their demand, and (5) be explicitly or implicitly denied admittance." *State v. Richards*, 136 Wn.2d 361, 369, 962 P.2d 118 (1998). "The remedy for an unexcused failure to comply with the 'knock and wait' rule is suppression of the evidence obtained after the entry." *Richards*, 136 Wn.2d at 371.

"Whether an officer waited a reasonable time before entering a residence is a factual determination to be made by the trial court and depends upon the circumstances of the case." *Richards*, 136 Wn.2d at 374. We evaluate the reasonableness of the waiting period by looking to the underlying purposes of the knock and announce rule, including "'(1) reduction of potential violence to both occupants and police arising from an unannounced entry, (2) prevention of unnecessary property damage, and (3) protection of an occupant's right to privacy.'" *Ortiz*, 196 Wn. App. at 308 (quoting *Coyle*, 95 Wn.2d at 5). The "waiting period ends once the rule's purposes have been fulfilled and waiting would serve no purpose." *Ortiz*, 196 Wn. App. at 308. The police are not required to wait for an actual refusal because "'denial of admittance may be implied from the occupant's lack of response.'" *Ortiz*, 196 Wn. App. at 308 (quoting *State v. Garcia-Hernandez*, 67 Wn. App. 492, 495, 837 P.2d 624 (1992)).

In cases where the officers heard movement inside the residence, courts have upheld waiting periods between announcing and forcing entry of between five to ten seconds. *See State v. Johnson*, 94 Wn. App. 882, 890-91, 974 P.2d 855 (1999); *State v. Jones*, 15 Wn. App. 165, 166, 168, 547 P.2d 906 (1976).

The trial court in this case found that Libbey "knocked on the front door of the residence and announced in a loud voice that the Longview Police Department was at the residence with a search warrant and for the occupants to come to the door." Clerk's Papers (CP) at 113. It then

11

found that Libbey repeated this activity two more times over about fifteen seconds before Langlois authorized the use of force to enter the residence. Libbey's, Langlois's, and Durbin's testimony supported these findings. Potts has not suggested any reason why the fifteen second delay was unreasonable.

Potts assigns error to the trial court's findings regarding Libbey's three knock and announce attempts over fifteen seconds before Durbin used the ram. He emphasizes Potts's testimony that he did not hear the police announce their presence despite standing mere feet from the front door. We review challenges to the trial court's findings of fact solely for whether they are supported by substantial evidence. *Vickers*, 148 Wn.2d at 116. Credibility determinations are for the trier of fact and we do not review them on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Libbey, Durbin, and Langlois all testified at the suppression hearing that Libbey knocked and announced three times over fifteen seconds before Durbin used the ram. Substantial evidence supports the trial court's findings of fact on this issue.

The trial court did not err by denying Potts's motion to suppress evidence.

III.     SUFFICIENCY OF EVIDENCE OF INTENT TO DELIVER

Potts contends that insufficient evidence supports his convictions for possession with intent to deliver a controlled substance as to both methamphetamine and heroin. He claims that insufficient evidence supported the element that he intended to deliver the controlled substances. Potts claims that "substantial corroborating factors" are required beyond mere quantity and packaging of drugs to prove intent to deliver and no such factors were present in this case. [4] Br. of Appellant at 33. We conclude that such factors were present in this case.

---

[4] Potts also contends that the police ignored numerous indicia of personal drug use at his residence when executing the search warrant. He does not suggest how evidence of his personal drug use contradicts the additional evidence from his residence of intent to deliver.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). In claiming insufficient evidence, "the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

RCW 69.50.401(1) makes it unlawful for any person to "possess with intent to manufacture or deliver" a controlled substance. In order to convict, the jury instructions in this case required that the jury find: "(1) That on or about November 12, 2015, the defendant possessed a controlled substance, [methamphetamine/heroin]; (2) That the defendant possessed the substance with the intent to deliver a controlled substance, [methamphetamine/heroin]; and (3) That the acts occurred in the State of Washington." CP at 92, 97.

Mere possession of a controlled substance without more is insufficient to support a conviction of intent to deliver. *State v. McPherson*, 111 Wn. App. 747, 759, 46 P.3d 284 (2002). "At least one other factor supporting an inference of intent must exist. The defendant's intent must logically follow as a matter of probability from the evidence." *State v. Missieur*, 140 Wn. App. 181, 185, 165 P.3d 381 (2007). Examples of additional factors supporting an inference of intent to deliver include: "large amounts of cash, scales, cell phones, address lists, and the like, which have been acknowledged as delivery paraphernalia." *State v. Slighte*, 157 Wn. App. 618, 627 n.13, 238 P.3d 83 (2010).

13

In this case, the police found a large quantity of drugs, a scale with white crystal residue on it, $600 cash, $450 of which was on Potts's person, and numerous plastic baggies associated with drug trafficking. Taking the evidence in the light most favorable to the State, a reasonable juror could conclude that Potts had the intent to deliver both methamphetamine and heroin. Sufficient evidence supports his convictions.

IV.     ADMISSION OF PHYSICAL EVIDENCE

Potts contends that the trial court abused its discretion by admitting an untested bag of suspected drugs into evidence because the State failed to prove that it contained a controlled substance.[5] We disagree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. The threshold to admit relevant evidence is very low and even minimally relevant evidence is admissible. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

The trial court has considerable discretion to consider what evidence is relevant and to balance its possible prejudicial impact against its probative value. *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014). Accordingly, we review a trial court's decision to admit evidence when a party objects based on relevance and prejudicial effect for a manifest abuse of discretion. *Barry*, 184 Wn. App. at 801-02. A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Barry*, 184 Wn. App. at 802.

---

[5] Potts does not provide any specific evidentiary rule he believes required the exclusion of the untested bag from evidence. We address his argument as a challenge to the bag's relevance.

In *State v. Caldera*, the State's expert visually inspected the substance in each of several bags, testified that the bags appeared alike, and stated that each contained a similar amount of a white powdery substance. 66 Wn. App. 548, 550, 832 P.2d 139 (1992). The expert randomly selected one bag for testing and found it to be cocaine; based on which the trial court found all the bags contained cocaine. *Caldera*, 66 Wn. App. at 550. The court ruled that "scientific testing of a random portion of a substance that is consistent in appearance and packaging is reliable and supports a finding that the entire quantity is consistent with the test results of the randomly selected portion." *Caldera*, 66 Wn. App. at 550.

In *State v. Crowder*, the State's expert tested one of the multiple containers of a "leafy substance" seized from the defendant's garage and found it contained marijuana. 196 Wn. App. 861, 865, 385 P.3d 275 (2016). The defendant had previously provided two minors with a substance from one of the containers. *Crowder*, 196 Wn. App. at 864-65. The expert did not testify the substances in the tested and untested containers were similar. *Crowder*, 196 Wn. App. at 870. Additionally, the court concluded the expert was not in a position to compare the substance tested in the lab with the substance the defendant had distributed to the minors. *Crowder*, 196 Wn. App. at 870. The substance distributed had been consumed. *Crowder*, 196 Wn. App. at 870.

In this case, Dunn tested one of two small bags inside a larger bag, each of which contained "a crystalline material." 3 RP at 390. Langlois testified that the exhibit at issue contained "[t]wo bags of crystal found in the toilet" and identified them as such. 3 RP at 342. Potts's girlfriend testified that she attempted to flush three bags totaling an ounce of methamphetamine and two ounces of heroin.

*Caldera* and *Crowder* dealt with sufficiency of evidence to sustain convictions for distributing controlled substances when the State tested only a portion of drugs. 66 Wn. App. at

15

549-50; 196 Wn. App. at 866. Unlike those cases, Potts challenges the admissibility of the untested bag into evidence. Although Dunn did not test the contents of the second bag, its characteristics matched those of the tested bag, the police found it with the other two and a half bags of drugs in the toilet, Langlois testified that it contained "crystal," and Potts's girlfriend testified that it contained methamphetamine. Its admission into evidence made it more likely that Potts possessed a controlled substance, even though the State did not test the bag. The trial court did not abuse its discretion by admitting it into evidence.

We affirm Potts's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Johanson, J.