Pennell, J.
¶1 John Crowder raped a 14-year-old girl at gunpoint after supplying her two friends with a substance purported to be marijuana. He was convicted after a jury trial. The State’s evidence at trial, while strong, lacked an essential component: proof the substance distributed by Mr. Crowder was in fact marijuana. Based on this error, we reverse Mr. Crowder’s two convictions for distribution of controlled substances. Mr. Crowder’s rape conviction is affirmed in full.
FACTS[1]
¶2 Two juvenile males, S.I. and Z.H., met Mr. Crowder while out walking on a July night. Mr. Crowder initially invited the two males to join him in setting off some fireworks. They then attended a nearby bonfire. While at the bonfire, Mr. Crowder asked S.I. and Z.H. if they wanted to smoke some marijuana. Both said yes.
¶3 Mr. Crowder took S.I. and Z.H. to his house to obtain marijuana. All three went inside the garage. Once inside, *865 Mr. Crowder retrieved a substance believed to be marijuana from prescription bottles located in a wooden cabinet. Mr. Crowder and the two young men then smoked the apparent marijuana. When they finished, all three got into Mr. Crowder’s Jeep and headed back to the bonfire.
¶4 After returning to the bonfire, Mr. Crowder and the two boys drank vodka shots. Z.H. then suggested inviting 14-year-old I.D. to join the group. After exchanging text messages, I.D. agreed to come out. She snuck out of her house through a window, and Mr. Crowder picked her up in his Jeep. I.D. had never met Mr. Crowder before.
¶5 Back at the bonfire, S.I. fell asleep and Z.H. passed out. I.D. was starting to get tired when Mr. Crowder came up behind her, pulled her head back, and tried to pour vodka down her throat. Angered, I.D. got up and started to head home. As she walked by the Jeep, Mr. Crowder grabbed I.D. and turned her around. I.D. told Mr. Crowder to let her go. He did not. Mr. Crowder removed a gun from his pocket and ordered I.D. to undress and get into the back of his Jeep. He held the gun up against I.D.’s head and pulled back the trigger. At this point, I.D. complied with Mr. Crowder’s demands.
¶6 Once inside the Jeep, Mr. Crowder raped I.D. The assault lasted approximately an hour. Eventually I.D. was able to get up, clothe herself, and run home. She snuck back in through the window and disclosed the rape several days later. At this point, the police began an investigation.
¶7 Five days after the assault, law enforcement executed a search warrant at Mr. Crowder’s house. During the search, police found several firearms, including a revolver. Police also recovered prescription bottles containing a leafy substance from Mr. Crowder’s garage. One of the bottles was tested for its tetrahydrocannabinol (THC) content and was determined to contain marijuana. An officer showed the revolver seized from Mr. Crowder’s house to I.D. She identified it as the same gun used by Mr. Crowder. The gun was never test fired.
*866 ¶8 Mr. Crowder was charged with rape in the first degree with a firearm enhancement and a special allegation that the victim was under the age of 15, or in the alternative, rape of a child in the third degree, as well as with two counts of distribution of a controlled substance to a person under the age of 18. The matter proceeded to trial. During voir dire, a prospective juror indicated he had been a child sex abuse victim. Defense counsel moved to strike the juror for cause. The State indicated it had no objection but asked to approach the bench. A bench conference occurred off the record. When the conference ended, the court excused the juror.
¶9 The jury convicted Mr. Crowder of the offenses against him as charged. He received a sentence of 360 months to life. Mr. Crowder appeals.
ANALYSIS
¶10 Mr. Crowder’s appeal proposes three bases for reversal: First, he claims the trial court’s off-the-record discussion during voir dire violated his public trial right. Second, he argues the State presented insufficient evidence the substance distributed to S.I. and Z.H. met the legal definition of marijuana. Finally, he contends insufficient evidence supports the State’s claim that he used an actual firearm while raping I.D. Mr. Crowder’s second claim is persuasive. We reject the other two.

Public trial right

¶11 The right to a public trial is guaranteed by article I, sections 10 and 22 of the state constitution. State v. Love, 183 Wn.2d 598, 604-05, 354 P.3d 841 (2015), cert. denied, 136 S. Ct. 1524 (2016). When reviewing a public trial claim, we follow a three-step analysis asking (1) whether the public trial right attaches to the proceeding at issue, (2) if so, whether the courtroom was closed, and (3) whether the closure was justified. Id. at 605. “The appellant carries the burden on the first two steps; the proponent of the closure carries the third.” Id.
*867 ¶12 Mr. Crowder claims the trial court violated his right to a public trial when it engaged counsel in an off-the-record discussion during a juror challenge. While we agree with Mr. Crowder that the public trial right attaches to this aspect of jury selection, see id. at 605-06, we do not agree there was a closure. No part of the juror challenge took place outside of direct public hearing and view. While in open court, the juror was questioned, Mr. Crowder’s counsel made his motion for cause, and the State concurred. At this point, the challenge was complete. There was nothing further to make public. Although the parties engaged the judge in an unrecorded sidebar prior to the court entering its formal ruling, this interruption does not change the fact that the substance of the juror challenge occurred entirely in open court.
 ¶13 Mr. Crowder’s public trial argument would have traction only if he could show something substantive occurred during the off-the-record sidebar. Our courts utilize the “experience and logic” test to determine whether a particular court procedure implicates the public trial right. Id. at 605. Sidebar conferences generally do not meet this test because they historically have been closed to the public and because public access would not positively enhance the proceedings. State v. Smith, 181 Wn.2d 508, 511, 334 P.3d 1049 (2014). Mr. Crowder fails to meet his burden of establishing that the sidebar in his case falls outside the general rule. The State proffers the sidebar discussion simply addressed nonsubstantive procedural matters regarding the trial court’s motions practice. Mr. Crowder does not contest this proffer, and nothing in the record suggests it is inaccurate. While it would have been preferable for the court to have ensured the sidebar was recorded, see id. at 518, we are satisfied the present circumstances do not permit Mr. Crowder’s public trial challenge.

Insufficient evidence of marijuana

¶14 Mr. Crowder argues the State failed to meet its burden of proof for the two counts of distributing a con *868 trolled substance to a person under the age of 18. Specifically, he maintains there is no evidence that the substance he provided to S.I. and Z.H. contained a THC content of 0.3 percent as required by statute.[2]
¶15 Evidence is sufficient to support a conviction where, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When an appellant challenges the sufficiency of the evidence, he “admits the truth of the State’s evidence and all inferences that reasonably can be drawn therefrom.” Id. Appellate courts defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Circumstantial evidence carries the same weight as direct evidence. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).
¶16 The parties do not dispute the elements the State was required to prove at trial. Under RCW 69.50.406(2), the State must prove the defendant was a person over the age of 18 and that he distributed a controlled substance, including marijuana, to a person under 18 who is at least three years his junior. For purposes of this crime, “‘[m]ari-juana’ . . . means all parts of the plant Cannabis, whether growing or not, with a THC concentration greater than 0.3 percent on a dry weight basis . . . .” Former RCW 69.50-,101(t) (2014).
¶17 While the parties agree that the State must prove distribution of a controlled substance and that in the case of marijuana, the State must prove a THC concentration of greater than 0.3 percent, the dissent does not accept this premise. Under the dissent’s construction, the statute governing distribution of a controlled substance to a minor *869 differs materially from the crime of distribution of a controlled substance in that the latter requires proof of the identity of the controlled substance, but the former does not. We find no such distinction. The statute governing distribution to minors (RCW 69.50.406) incorporates the distribution statute (RCW 69.50.401) and simply adds elements regarding the age of the distributor and recipient. Compare RCW 69.50.401, with RCW 69.50.406. Given the State must prove the presence of a controlled substance in a normal distribution case, the same is necessarily true in a case alleging distribution to a minor.
 ¶18 The requirement that marijuana, to qualify as a controlled substance, must have a THC content of at least 0.3 percent is not something that can be dismissed as an unimportant definition. Again, the parties do not dispute this point. Nor should they. The difference between a definitional statutory requirement and an element is generally pertinent to issues such as the adequacy of an information or the court’s “to convict” instructions. See State v. Porter, 186 Wn.2d 85, 375 P.3d 664 (2016) (allegation of charging error regarding definition of “possession”); State v. Johnson, 180 Wn.2d 295, 325 P.3d 135 (2014) (allegation of charging error regarding definition of “restrain”); State v. Allen, 176 Wn.2d 611, 294 P.3d 679 (2013) (plurality opinion) (allegation of charging error and omission of “true threat” definition from jury’s “to convict” instruction); State v. Lorenz, 152 Wn.2d 22, 93 P.3d 133 (2004) (allegation of omission of “sexual gratification” definition from jury’s “to convict” instruction). But the same is not true when it comes to a sufficiency challenge. The State is obliged to present sufficient evidence to establish that a defendant’s conduct falls within the scope of a criminal statute, regardless of whether the statute’s requirements are elemental or definitional. See State v. Stevens, 158 Wn.2d 304, 309-10, 143 P.3d 817 (2006) (characterization of a statutory requirement as definitional does not relieve State of burden of proof); see also State v. Rich, 184 Wn.2d 897, 365 P.3d 746 *870 (2016) (analyzing whether State presented sufficient evidence to meet statutory definition of “recklessness”); State v. McKague, 172 Wn.2d 802, 805, 262 P.3d 1225 (2011) (analyzing whether State presented sufficient evidence to meet statutory definition of “substantial bodily harm”). In sum, no matter which label applies, the State was obliged to present sufficient evidence of 0.3 percent THC in order to sustain Mr. Crowder’s conviction.
¶19 Although the parties agree about the State’s eviden-tiary burden, there was little discussion at trial about THC. On cross-examination, the State’s toxicology expert testified that to classify a substance as marijuana, it must contain more than 0.3 percent THC. The expert also testified on direct examination that she had examined one of the containers seized from Mr. Crowder’s home and determined it contained marijuana. Read in total, the expert’s testimony was sufficient to establish the substance found inside the container met the legal definition of marijuana. But the testimony did not establish the marijuana tested by the toxicologist had the same THC content as the substance provided to S.I. and Z.H.
¶20 As pointed out by the dissent, a toxicologist can sometimes provide random sampling testimony, indicating a tested substance was most likely similar to an untested substance. See State v. Caldera, 66 Wn. App. 548, 832 P.2d 139 (1992). However, such testimony must be based on the foundation that the tested and untested materials appeared similar. Id. at 550. No such foundation was established in this case. Because the State’s toxicologist was not in a position to compare the substance tested in the lab to that consumed by S.I. and Z.H., random sampling did not provide the State an avenue of proof.[3]
*871 ¶21 The testimony of S.I. and Z.H. also failed to establish a link between the tested substance and the substance that was consumed. At the time of the police search, at least four pill bottles[4] were located inside Mr. Crowder’s garage. Two bottles were amber colored and located in the wooden cabinet described by S.I. and Z.H. Two more were taken from a satchel. These bottles appeared to be clear in color and bore marijuana labels. All four bottles were potential sources of the substance distributed by Mr. Crowder. Yet only one was tested. During trial, neither S.I. nor Z.H. described the color of the bottle utilized by Mr. Crowder. Nor did they specify whether the bottle had a label. The boys were never shown a bottle to confirm whether it appeared similar to the one used by Mr. Crowder. Given the multiple possible sources of the substance distributed by Mr. Crowder, the State’s theory that it tested a representative sample is too speculative to meet the substantial evidence requirement.
¶22 The testimony from S.I. and Z.H. also did not establish the potency of the substance provided to them by Mr. Crowder. The two juveniles testified they were familiar with marijuana and that the substance provided to them by Mr. Crowder made them “feel high.” But because the boys did not test the substance provided to them, their use of the term “marijuana” does not carry the same technical meaning as the term utilized by the toxicologist. Nor were the boys’ experiences with marijuana sufficient to establish potency. There was no testimony about the meaning of the 0.3 percent THC cutoff level or whether a substance with less than 0.3 percent THC would be capable of producing the psychological effects recounted by the two young men. There was not even any testimony about whether 0.3 *872 percent is a high, low, or average amount of THC.[5] Given this lack of context, testimony from the juveniles that they received a good “high” from the substance provided to them by Mr. Crowder does not help the State satisfy its burden.
¶23 Proof of THC content would not have been difficult, let alone impossible. Apart from establishing a link between the bottle tested for THC and the one observed by S.I. and Z.H.,[6] the State could have introduced expert testimony regarding the nature of THC. Information about the typical THC content of marijuana and the type of potency required to produce sensations associated with being “high” could have provided the jury sufficient evidence to conclude that the substance distributed by Mr. Crowder must have had a THC content of at least 0.3 percent. But this was not done. The State did not give the jury any information about the significance of a 0.3 percent THC level. Based on this lack of information, the State failed to meet its burden. Mr. Crowder’s marijuana delivery convictions must be reversed with prejudice.

Sufficiency of the firearm enhancement

¶24 Mr. Crowder contends insufficient evidence supports his firearm sentencing enhancement because the State did not prove the firearm was operable as required by RCW 9.41.010(9). We disagree for the reasons we recently set forth in State v. Tasker, 193 Wn. App. 575, 373 P.3d 310, review denied, 186 Wn.2d 1013 (2016).
¶25 As explained in Tasker, evidence that a device appears to be a real gun and is wielded during commission *873 of a crime is sufficient circumstantial proof that the device is an actual firearm, as defined by RCW 9.41.010. Tasker, 193 Wn. App. at 594. I.D.’s testimony provided sufficient circumstantial proof in this case. She testified Mr. Crowder threatened her with a gun and placed it to her head. She described the gun as having a “spinning barrel,” 2 Verbatim Report of Proceedings (Sept. 17, 2014) at 143, and later identified the gun as a revolver seized from Mr. Crowder’s house. The totality of these circumstances sufficiently established that Mr. Crowder was armed with a real gun as required by RCW 9.94A.533(3) and 9.41.010(9).
CONCLUSION
¶26 Mr. Crowder’s conviction for first degree rape with a firearm enhancement is affirmed. His convictions for distribution of controlled substances are reversed with prejudice. This matter is remanded to superior court. In the unpublished portion of this opinion, we reject the arguments set forth by Mr. Crowder in his statement of additional grounds for review.
¶27 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
Siddoway, J., concurs.
¶28

 Because Mr. Crowder’s challenge goes to the sufficiency of the evidence, we construe the facts in the light most favorable to the State. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

 At the time of trial, the applicable statute was codified at RCW 69.50.101(t). The same statutory definition applies today, but is now found at subsection (v).

 While the foundation for random sampling testimony was not met in this case, such testimony would be unlikely by itself to establish THC content. When the fact to be established is not merely the identity of a drug, but the purity or toxicity level, visual similarity would not appear to be sufficient to permit extrapola *871 tion. Instead, farther testimony, explaining why similar toxicity can be assumed from similar appearance, would need to be presented.

 In his testimony, S.I. described seeing “bottles” of marijuana. 2 Verbatim Report of Proceedings (Sept. 17, 2014) at 223. The State never clarified the number of bottles observed by S.I.

 These are not matters amenable to judicial notice. See State v. Barringer, 32 Wn. App. 882, 888, 650 P.2d 1129 (1982) (court erred in taking judicial notice, through jury instruction, that Valium is also known as diazepam when only diazepam was listed in the statutory schedule of controlled substances), overruled on other grounds by State v. Monson, 113 Wn.2d 833, 849-50, 784 P.2d 485 (1989).

 Had the State produced such testimony, the evidence may still have been insufficient. Given the marijuana had been consumed, the State’s best evidence regarding THC content would appear to have been expert testimony from a toxicologist or law enforcement officer.