IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82067-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SEAN WESLEY CROCKER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — A jury convicted Sean Crocker of six counts of distribution of marijuana to a minor, in addition to other marijuana-related charges. Crocker argues that, relying only upon tests of limited samples later found at his residence, the State failed to prove beyond a reasonable doubt that the substances he distributed were marijuana. We affirm.

FACTS

Kingston High School staff became aware of a video posted on social media that appeared to show a student receiving a "dab," or THC[1] concentrate, from Sean Crocker in exchange for payment. School officials spoke to the student who posted the video, who admitted that he and the student depicted in the video

---

[1] THC, or tetrahydrocannabinol acid, is the principal psychoactive ingredient in cannabis. According to the testimony at trial, a "dab" is concentrated THC, an oily or waxy product derived from cannabis. Report of Proceedings (RP) (Aug. 14, 2019) at 506.

left school and went to Crocker's nearby house to "get high."[2]  School staff referred the matter to law enforcement.

About two weeks after the video was posted, police officers executed a search warrant at Crocker's home.  During the search, police officers found drug paraphernalia and plant material believed to be marijuana in various forms throughout the residence.  Police officers also found items associated with the packaging and sale of drugs including scales, baggies, and a notebook with names and amounts, and a document that appeared to be a drug ledger.

While the officers were searching Crocker's residence, a male teenager approached the house, entered the backyard, and knocked on Crocker's bedroom window.  Over the course of several hours, while the officers processed the evidence, several more teenagers arrived at Crocker's home sporadically.  Law enforcement arranged for laboratory testing of samples of apparent leaf marijuana, including one labeled "Durango" and one sample of THC concentrate, all recovered from Crocker's bedroom.  Based on interviews with the minors who arrived on the date of search and the physical evidence, the State charged Crocker with seven counts of distribution of marijuana to a minor, two counts of manufacture of marijuana, and one count of possession of a controlled substance. Each count of distribution pertained to a different minor.

At the conclusion of Crocker's first trial, the jury found him guilty of one count of manufacturing marijuana, acquitted him of a second count of

---

[2] RP (Aug. 15, 2019) at 691.

manufacturing marijuana, and was unable to reach a verdict on the remaining counts.  Crocker sought discretionary review of the trial court's ruling denying his motion to dismiss the distribution counts after the State rested, arguing that the trial court committed obvious error when it denied his motion because the State's evidence failed to establish that the substance distributed to minors met the statutory definition of marijuana.[3]  An appellate court commissioner denied the motion.

Following a second trial, the jury convicted Crocker of six counts of distribution to a minor and one count of possession with intent to deliver marijuana.[4]  He appeals.

ANALYSIS

Crocker challenges the sufficiency of the evidence supporting his convictions of distribution of marijuana to a minor.  He argues that, as was the case in State v. Crowder, the State's evidence lacked an "essential component," namely, proof that the substance allegedly distributed to minors was, in fact, marijuana.[5]

Evidence is sufficient to support a conviction where, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

---

[3] See RAP 2.3(b)(1).

[4] The State declined to retry one of the distribution counts.

[5] 196 Wn. App. 861, 864, 385 P.3d 275 (2016).

[6] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

When an appellant challenges the sufficiency of the evidence, he "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[7]  Appellate courts defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.[8]  Circumstantial evidence carries the same weight as direct evidence.[9]

In order to convict Crocker, the State had to prove beyond a reasonable doubt that the substance he distributed was marijuana, which the relevant statute defines as

> all parts of the plant *Cannabis*, whether growing or not, with a <u>THC concentration greater than 0.3 percent on a dry weight basis</u>; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin.[10]

In Crowder, the defendant met two juveniles and invited them to his home to smoke marijuana.[11]  Crowder brought them into his garage, where he retrieved apparent marijuana from a prescription bottle located in a wooden cabinet.[12]  Five days later, when law enforcement executed a warrant at Crowder's residence, they recovered four prescription bottles containing a leafy substance that

---

[7] Id.

[8] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

[9] State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

[10] Former RCW 69.50.101(x) (2018) (emphasis added).  Although this statutory provision has been amended several times since the relevant conduct occurred in this case, this language defining marijuana has remained unchanged.

[11] Crowder, 196 Wn. App. at 864.

[12] Id. at 864-65.

appeared to be marijuana in the garage and arranged for the material in one of the containers to be tested for its THC content.[13] The result of that testing indicated that the substance was marijuana.[14]

Nevertheless, Division Three of this court concluded that the State failed to produce evidence that tied the substance tested to the substance Crowder provided to the two juveniles days earlier.[15] While "random sampling" testing may in some cases suffice to identify a substance, the court noted that the toxicologist "was not in a position to compare" the substance tested in the lab with the substances Crowder provided to the juveniles.[16] And the testimony of the two juveniles did not establish the required nexus between the bottle that contained confirmed marijuana and the one from which Crowder distributed apparent marijuana because the juveniles did not describe the pill bottle and the police found both colored and clear bottles.[17] And finally, the court explained that, without "context" or sufficient experience with marijuana, the juveniles' testimony that they felt "high" did not establish the required potency where

> [t]here was no testimony about the meaning of the 0.3 percent THC cut-off level or whether a substance of less than 0.3 percent THC would be capable of producing the psychological effects recounted

---

[13] Id. at 865, 871.

[14] Id. at 865.

[15] Id. at 870.

[16] Id.; see also State v. Caldera, 66 Wn. App. 548, 550, 832 P.2d 139 (1992) ("scientific testing of a random portion of a substance that is consistent in appearance and packaging is reliable and supports a finding that the entire quantity is consistent with the test results of the randomly selected portion").

[17] Crowder, 196 Wn. App. at 871.

by the young men.  There was not even any testimony about whether 0.3 percent is a high, low, or average amount of THC.[18]

The court explained that, even in the absence of a direct connection between the tested and distributed substances, the State could have met its burden by introducing

> expert testimony regarding the nature of THC.  Information about the typical THC content of marijuana and the type of potency required to produce sensations associated with being "high" could have provided the jury sufficient evidence to conclude that the substance distributed by Mr. Crowder must have had a THC content of at least 0.3 percent.[19]

Having failed to elicit such testimony, the court reversed Crowder's conviction because the State failed to meet its burden to prove that he distributed marijuana.

This case is like Crowder to the extent that, given the timing of the alleged distributions relative to the search, the random sample testing of some apparent marijuana found in Croker's bedroom could not, without more, establish that Crocker distributed marijuana.  But, in contrast to the evidence presented in Crowder, the evidence in this case established that the level of THC is what differentiates marijuana from hemp, and that it is because of this difference in potency that the two types of cannabis are not used interchangeably.

The testimony of Detective Bowman and the toxicologist established that hemp and marijuana are both cannabis and both contain THC.  Both witnesses explained that cannabis containing a THC concentration of greater than 0.3

---

[18] Id. at 871-72.

[19] Id. at 872.

percent is classified as marijuana, whereas cannabis with a THC concentration of less than that amount is classified as hemp. The evidence established that only marijuana is smoked or otherwise ingested for its intoxicating effects. Hemp, on the other hand, is an "industrial product" used in the production of fiber products and hemp seed oil.[20]

According to the evidence, cannabis cultivated and sold for the purpose of human consumption generally has a THC concentration of between 4 to 8 percent, or slightly higher.[21] A THC concentration level of below 0.3 percent is "low" relative to cannabis that is ingested, and accordingly, is not sold for that purpose.[22] Relative to marijuana, THC concentrate, or "dabs" generally have a much higher THC concentration level of around 50 percent or as high as 80 to 90 percent.[23]

In addition to the testimony about THC as it correlates with different types of cannabis, this case is also distinct from Crowder because that case involved an alleged distribution to minors in the context of a social interaction on a single occasion. Here, there was substantial evidence to indicate that Crocker was operating a business that involved selling marijuana and THC concentrate for recreational use to repeat customers. Seven current and former high school students testified that they had obtained marijuana and/or THC concentrate from Crocker, and all but one testified that they obtained marijuana from him on multiple

---

[20] RP (Aug. 14, 2019) at 589.

[21] Id. at 589-90.

[22] Id. at 589, 660.

[23] Id. at 590.

occasions. The witnesses consistently testified that Crocker sold small amounts of marijuana or dabs from his bedroom window at the back of the house.

The police found numerous pieces of evidence in proximity to the window where Crocker conducted transactions, including the samples that were tested and determined to have the requisite THC concentration. In this vicinity, they also found digital scales with residue that appeared to be THC concentrate, the notebook listing names and amounts, the apparent ledger, and marijuana in multiple cabinet drawers, including some labeled with well-known commercial strains of marijuana, such as "Gorilla Glue." There was also a sign on Crocker's bedroom window, visible from the outside, which said "You owe," next to an image of Crocker.[24] In various locations in and around the home, the police found 15 marijuana plants and marijuana in different stages of harvesting. The police found baggies with written numbers that appeared to refer to common weights.

The clear inference from the circumstantial evidence is that Crocker's business was based on the distribution of marijuana, not hemp, to repeat customers. And with regard to the distribution count that was based specifically on the distribution of THC concentrate, even assuming the dry weight percentage basis applies, the only testimony in the record regarding the typical high concentration levels of cannabis in that form leaves no basis to conclude the THC level was less than 0.3 percent.

---

[24] Id. at 620.

As in <u>Crowder</u>, witnesses who purchased marijuana from Crocker testified that they experienced psychological and physiological effects when they consumed the substances he provided. But in this case, the evidence provided context for those descriptions. Several individuals testified to significant, or in some cases, extensive, experience with marijuana. And there was testimony to indicate that the substances obtained from Crocker produced effects consistent with marijuana obtained from other sources.

In sum, the State introduced substantial evidence, in addition to the laboratory test results of THC content, to support the allegation that Crocker distributed marijuana. That evidence included testimony about THC and typical levels of potency, testimony about the effects of the substances from repeat buyers, and evidence indicative of a recreational marijuana business. Taken as a whole and construed in the light most favorable to the State, the evidence was sufficient to support Crocker's convictions.

Affirmed.

_____

WE CONCUR:

_____                _____