# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56819-5-II |
| Respondent, | |
| v. | |
| JASON ROBERT GARCIA, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Jason R. Garcia appeals his convictions for robbery and false imprisonment, arguing that his public trial right was violated when a sidebar was conducted without its contents being memorialized on the record until the next trial day.  Garcia raises additional claims in a statement of additional grounds (SAG).  We determine that the sidebar in Garcia's trial did not implicate his public trial right and that Garcia's SAG claims fail.  We affirm.

FACTS

I.  BACKGROUND

In July 2020, Garcia and his friend, Christopher Ryan, set up an acquaintance, Michael Robertson, to be robbed.  A video recording system at Ryan's home captured images of several people, including Garcia, on the premises on July 28.  The recording and its timestamp showed Garcia leaving Ryan's house around 5:00 p.m.  About ten minutes later, a man on a motorcycle with a blue helmet arrived at the house.  Ryan later identified the man on the motorcycle as Garcia.

Around 6:00 p.m., Robertson and his girlfriend, Theresa Curtis, also arrived at Ryan's house, and Ryan let them in. Garcia entered the room where Robertson and Curtis were and ordered Robertson to empty his pockets. A fight started. Garcia, armed with a firearm, initially blocked Robertson and Curtis from leaving the room, but when Garcia became distracted, Robertson and Curtis fled from the house in Curtis' car. Garcia, wearing the blue helmet, followed on the motorcycle. While driving away, Curtis and Robertson noticed police located in a restaurant parking lot and pulled over. They reported the incident and identified Garcia and Ryan as the men who robbed them. Garcia was not immediately arrested.

Garcia would later say that the following day, he rode his motorcycle to his friend David Boyer's house, wearing a red helmet. Garcia left the red helmet at Boyer's house.

Garcia was soon arrested for the robbery of Robertson and Curtis. He denied any involvement. Garcia was charged with two counts of first degree robbery, two counts of unlawful imprisonment, and one count of first degree unlawful possession of a firearm.

In a search of Garcia's house, police recovered a blue motorcycle helmet, but not a red helmet. The police also obtained the videos from Ryan's video recording system through two different search warrants. With the initial search warrant for the home, the police obtained the video recorder. Then, on August 24, 2020, the police obtained another search warrant to recover the specific videos from the recorder, which were obtained after some delay. The warrant return was signed weeks later, in October 2020.

II. PRETRIAL

Garcia's case was scheduled to proceed to a jury trial. Prior to trial, Garcia moved to suppress the video evidence obtained by the August 24 warrant. Garcia argued that the warrant

2

was returned outside of the 10-day period allowed by CrR 2.3(c).[1] In response, the State informed the court that it would not seek to admit any evidence obtained pursuant to the August 24 warrant; the only video evidence the State would offer would be pursuant to a different court order. The trial court determined, accordingly, that the issue was moot.

Garcia's trial was continued seven times. Six orders granting continuances were granted "upon agreement of the parties pursuant to CrR 3.3(f)(1)." Clerk's Papers (CP) at 168-72, 174. Most of the continuances were requested due to delays in discovery or defense preparation. Those agreed orders were dated September 8, 2020, November 19, 2020, February 26, 2021, May 19, 2021, May 26, 2021, and August 26, 2021. The other continuance, dated June 7, 2021, was requested by the defendant because of defense counsel's need to watch "several hundred videos" with the defendant and because of "limited time" to meet due to the COVID-19 pandemic. CP at 173. The trial court granted the request as being "required in the administration of justice pursuant to CrR 3.3(f)(2)." CP at 173.

## III. JURY TRIAL

Garcia's jury trial began on November 29, 2021. On the first day, before opening statements, the trial court discussed motions in limine with the State and defense counsel. Defense counsel requested a ruling in limine to prevent the admission of evidence of Garcia's criminal record and his "reputation for violence." 1 Verbatim Rep. of Proc. (VRP) at 69-70. Defense counsel and the State both discussed the evidence of Garcia's criminal record as evidence of "bad

---

[1] "The warrant shall be directed to any peace officer and shall command the officer to search, within a specified period of time not to exceed 10 days, the person, place, or thing named for the property or person specified." CrR 2.3(c).

acts." 1 VRP at 70-71. The trial court granted Garcia's motion and excluded reference to Garcia's criminal record and reputation.

At trial, Ryan, Curtis, and Robertson all testified consistently with the above facts.

Garcia also testified in his own defense. Garcia claimed the blue helmet found by police was not his and that he owned a red motorcycle helmet. The State asked Garcia where his red helmet was, and Garcia said he left it at Boyer's house. The State asked why Garcia did not call Boyer to have him bring the red helmet to him to prove he owned a red helmet, but Garcia said he thought the police already had possession of it.

When the State persisted to question Garcia about his red helmet and why it was not produced, the trial court interrupted the testimony and excused the jury. The trial court explained that it was concerned about the State's line of questioning because it could elicit testimony that Garcia was unable to produce his red helmet himself because he was in police custody. The State responded that it was only asking questions about why others did not produce the helmet, not Garcia. Before bringing the jury back to the courtroom, the trial court cautioned against the line of questioning. Garcia's testimony resumed.

During redirect examination, defense counsel began questioning Garcia about his upbringing and "being in the streets." 6 VRP at 47. The State requested a sidebar, and with the jury remaining in the courtroom, both counsel approached the bench for the discussion. The sidebar was not transcribed or recorded while it took place. When Garcia's testimony resumed, defense counsel struck their question about "being in the streets."

4

At the beginning of the next trial day, the trial court made a record outside of the presence of the jury about the sidebar.[2]  The trial court explained:

> [The State] and [defense counsel] and I had a sidebar while Mr. Garcia was testifying and the concern was -- based on a question that had been asked by [defense counsel], the concern was whether or not the defendant, by his answer, would be opening the door to potential character evidence; and I believe once we came out of that sidebar, [defense counsel] struck her question.

7 VRP at 5-6.  Both the State and defense counsel confirmed that the trial court's recollection of the sidebar was accurate.

The jury found Garcia guilty of the robbery counts and false imprisonment counts.  The jury did not reach a verdict on the charge of unlawful possession of a firearm, resulting in a mistrial on that count.  Garcia appeals.

## ANALYSIS

I.  SIDEBAR DID NOT IMPLICATE PUBLIC TRIAL RIGHT

Garcia argues that the sidebar conference, without it being promptly memorialized on the record, violated his right to public trial.  We disagree.

### A.  LEGAL PRINCIPLES

"Whether a defendant's right to a public trial has been violated is a question of law, subject to de novo review on direct appeal."  *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014).  The appellant has the burden to show the public trial right was implicated.  *State v. Love*, 183 Wn.2d 598, 605, 354 P.3d 841 (2015), *cert. denied*, 578 U.S. 906 (2016).

---

[2] Garcia's testimony occurred on December 7, 2021.  The verbatim report of proceedings does not include any hearings from December 8.  The trial court's memorialization of the sidebar occurred on December 9.

When analyzing whether the public trial right has been affected, we " 'begin by examining . . . whether the public trial right is implicated at all . . . then turn to the question whether, if the public trial right is implicated, there is in fact a closure of the courtroom; and if there is a closure, whether . . . the closure was justified.' " *Smith*, 181 Wn.2d at 513 (alterations in original) (quoting *State v. Sublett*, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring)).

"[T]he experience and logic test [is used] to determine whether the proceeding at issue implicates the public trial right." *Id.* at 514. " 'The first part of the test, the experience prong, asks whether the place and process have historically been open to the press and general public. The logic prong asks whether public access plays a significant positive role in the functioning of the particular process in question.' " *Id.* (internal quotation marks omitted) (quoting *Sublett*, 176 Wn.2d at 73).

In *Smith*, our Supreme Court applied the experience and logic test to sidebar conversations and held that "sidebars do not implicate the public trial right." *Id.* at 511, 515-19. "Proper sidebars . . . deal with the mundane issues implicating little public interest." *Id.* at 516. But the court limited its holding, stating:

> [M]erely characterizing something as a "sidebar" does not make it so. To avoid implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and must either be on the record or be promptly memorialized in the record.

*Id.* at 516 n.10. The sidebars in *Smith*, according to the court, were proper sidebars because even though they were conducted in hallways, outside of the view of the public,[3] they were designed to

---

[3] The sidebars were not conducted in the courtroom because the physical layout made such conversations difficult to hold without risking "contaminating the jury with potentially prejudicial" information. *Smith*, 181 Wn.2d at 512.

address speaking evidentiary objections throughout the trial and were memorialized and recorded on the record. *Id.* 518-19. And considering the purpose of the public trial right, in part, is to allow "the public to observe the process and weigh the defendant's guilt or innocence for itself," the evidentiary topics discussed at the sidebars would not assist the public in these observations. *Id.* at 518.

The *Smith* court concluded:

> Sidebars have traditionally been held outside the hearing of both the jury and the public. Because allowing the public to "intrude on the huddle" would add nothing positive to sidebars in our courts, we hold that a sidebar conference, even if held outside the courtroom, does not implicate Washington's public trial right.

*Id.* at 519.

Not all pauses in court proceedings will qualify as a sidebar. In *State v. Whitlock*, our Supreme Court held that the public trial right was implicated when, during a bench trial, the judge left the courtroom with the attorneys to discuss issues about a key witness who was a police informant. 188 Wn.2d 511, 523, 396 P.3d 310 (2017). The State requested a sidebar, but the trial court instead adjourned court and called counsel into his chambers. *Id.* at 516. About two hours later, the trial court explained the contents of the discussion on the record. *Id.*

The *Whitlock* court determined that the public trial right was implicated by the chambers discussion. *Id.* at 523. It reiterated that sidebars under *Smith* deal with " "mundane issues implicating little public interest[,] done only to avoid disrupting the flow of trial, and either on the record or promptly memorialized in the record.' " *Id.* at 522 (alteration in original, some original alterations omitted) (quoting *Smith*, 181 Wn.2d at 516 & n.10). The court rejected the State's

argument that the topics discussed in the trial court's chambers were only legal issues appropriate for a sidebar, stating:

> [T]he objection argued in chambers in this case was not purely technical or legalistic. It was about a matter easily accessible to the public: informants and their motives to curry favor with authority.

*Id.* at 523. Moreover, even though the subject of the discussion was eventually placed on the record, because the proceeding occurred in a bench trial, "there was no reason for any delay in memorialization at all," and "[t]he entire objection could have been argued on the record at any time with no inconvenience to anyone." *Id.* Without those requirements for a sidebar being met, the court determined the departure of the trial court and the attorneys was a recess with a closed courtroom, not a sidebar. *Id.* at 516.

B. APPLICATION

Here, Garcia must carry the burden to establish implication of his public trial right. *See Love*, 183 Wn.2d at 605. Garcia argues that the delay in the memorializing the content of the pause in proceedings until the next court day means that the sidebar discussion fails to qualify as a proper sidebar under *Smith*. Garcia argues that we should, therefore, apply *Whitlock* to find that his public trial right was implicated.

Garcia cannot carry his burden. Delay in memorialization of a sidebar, by itself, does not necessarily implicate a public trial right. Division Three of this court considered a similar issue in *State v. Crowder*, 196 Wn. App. 861, 385 P.3d 275 (2016), *review denied*, 188 Wn.2d 1003 (2017). In *Crowder*, the parties and the court participated in a sidebar during jury selection, but the contents of the sidebar were never memorialized on the record. *Id.* at 867. The court rejected the defendant's argument that this failure necessarily violated his public trial right, stating, "Mr.

Crowder's public trial argument would have traction only if he could show something substantive occurred during the off-the-record side bar." *Id.* The court continued:

> The State proffers the sidebar discussion simply addressed nonsubstantive procedural matters regarding the trial court's motions practice. Mr. Crowder does not contest this proffer, and nothing in the record suggests it is inaccurate. While it would have been preferable for the court to have ensured the sidebar was recorded, . . . we are satisfied the present circumstances do not permit Mr. Crowder's public trial challenge.

*Id.* (internal citation omitted).

Similarly, here, Garcia cannot show that the sidebar conversation contained anything other than "mundane" matters appropriate for a proper sidebar. *See Smith*, 181 Wn.2d at 516. The trial court described the sidebar as pertaining to defense counsel's questioning and whether it might open the door to character evidence previously excluded by the trial court's in limine ruling. And both parties agreed with this summary. The content was limited to an evidentiary issue, with no showing that any substantive decisions were actually made, apart from perhaps defense counsel's own decision to alter their questioning to reflect a previous in limine ruling. Further, the sidebar was clearly conducted to avoid disrupting the flow of the trial. This is precisely the type of discussion that *Smith* characterizes as appropriate for a sidebar—whether and how an in limine ruling applies in the course of the questioning of a witness in front of a jury. *See id.* at 517 n.11 (*Smith* court analogized appropriate sidebar topics to an umpire calling balls and strikes in the course of a game).

Moreover, unlike *Crowder*, this sidebar was actually memorialized on the record, albeit on the morning of the next trial day. Garcia has not persuasively identified any meaningful

consequence to this modest delay. The public was still able to observe the discussion at the bench in real time and learn of the contents of the discussion in a relatively prompt manner.

Even if the delay of putting the contents on the record does not meet a narrow definition of "promptly memorialized" necessary for a "proper" sidebar under *Smith*, it does not follow that Garcia's public trial right is implicated. *Cf. State v. Karas*, 6 Wn. App. 2d 610, 620, 431 P.3d 1006 (2018) (rejecting argument that anything that is not a proper sidebar implicates the public trial right). He must still "show something substantive occurred during the off-the-record side bar." *Crowder*, 196 Wn. App. at 867. As shown above, this, Garcia cannot do.

Garcia's heavy reliance on *Whitlock* is misplaced. There, because the proceeding was a bench trial, none of the purposes of a sidebar were present. The court determined the conversation could have occurred in open court without any potential for contaminating the jury with prejudicial information or delaying the proceedings. *Whitlock*, 188 Wn.2d at 523; *compare Smith*, 181 Wn.2d at 512 (sidebar occurred in hallway due to risk of "contaminating" the jury). And, critically, the in-chambers conference did not involve a traditional subject matter of sidebars, such as "legal challenges and evidentiary rulings," but instead concerned a factual matter that was neither technical nor legalistic. *Whitlock*, 188 Wn.2d at 522-23.

Garcia has not carried his burden. We hold that Garcia's public trial right was not implicated by this sidebar.

II. SAG CLAIMS

Garcia asserts multiple additional grounds in his SAG. Garcia asserts (1) violations of his speedy trial rights due to multiple continuances, (2) errors based on the failure to conduct DNA testing on the blue motorcycle helmet and, relatedly, insufficiency of evidence because of false

witness testimony that would have been refuted by this DNA testing, (3) erroneous admission of evidence based on an improper warrant, (4) prosecutorial misconduct based on improper questions during Garcia's testimony, and (5) ineffective assistance of counsel for comments made by defense counsel about Garcia's prior bad acts. We determine that each of these grounds fails.

A. SPEEDY TRIAL RIGHTS

Garcia claims that his speedy trial rights were violated because multiple continuances delayed his trial for over a year. Garcia appears to argue that the delayed trial was both a violation of his constitutional right to a speedy trial and untimely under CrR 3.3.[4] We disagree.

1. Constitutional Speedy Trial Right

To determine whether the speedy trial right was violated under either the Washington or United States Constitutions, we employ a balancing test. *State v. Ollivier*, 178 Wn.2d 813, 827, 312 P.3d 1 (2013). "The analysis is fact-specific and 'necessarily dependent upon the peculiar circumstances of the case.' " *Id.* (internal quotation marks omitted) (quoting *State v. Iniguez,* 167 Wn.2d 273, 288, 292, 217 P.3d 768 (2009)).

When the delay to trial is requested by the defendant, the speedy trial right is generally not violated. *See id.* at 831-33 ("Nearly all of the continuances were sought so that defense counsel could be prepared to defend. This is an extremely important aspect of the balancing and leads us to conclude that the length of delay was reasonably necessary for defense preparation and weighs

---

[4] These should be construed as separate grounds. *See State v. Ollivier*, 178 Wn.2d 813, 822-28, 312 P.3d 1 (2013) ("While [CrR 3.3] has the purpose of ensuring that a defendant's constitutional right to a speedy trial is effectuated, complying with it does not necessarily mean that no constitutional violation occurs.") (analyzing "Right to a Speedy Trial Under CrR 3.3" and "Constitutional Right to a Speedy Trial" as separate claims).

against the defendant."); *also In re Pers. Restraint of Benn*, 134 Wn.2d 868, 952 P.2d 116 (1998) (Supreme Court determined there was no constitutional violation to defendant charged in May 1988 and brought to trial in March 1990 when the delay was almost entirely attributable to continuances that were requested by the defense or agreed to by the defense and there was no evidence of prejudice due to the delay); *see also United States v. Gearhart*, 576 F.3d 459, 463 (7th Cir. 2009) ("Where a defendant seeks and obtains a continuance, the defendant himself is responsible for the resulting delay").

Here, the requested continuances were all either agreed upon by both the State and defense, or requested by the defense. And the continuances were largely requested for additional discovery for the defense or to enable the defense to adequately prepare for trial, considering obstacles presented by the COVID-19 pandemic. Because these continuances were requested by Garcia and facilitated a trial that his defense was prepared for, the record does not support finding a violation of Garcia's constitutional right to a speedy trial.

2. Time for Trial Under CrR 3.3

Related to, but separate from, the constitutional right to speedy trial, CrR 3.3 governs a defendant's time to trial and generally requires in-custody defendants to be brought to trial within 60 days and out-of-custody defendants to be brought to trial within 90 days. But CrR 3.3(e)(3) also states that delays "granted by the court pursuant to section (f)" by continuances are excluded from the calculation of the time for the defendant's trial to be timely. CrR 3.3(f)(1) allows the trial court to grant continuances based on the agreement of the parties, and CrR 3.3(f)(2) permits granting continuances based on a motion by a party.

Here, six of the continuances delaying Garcia's trial were granted by the trial court "upon agreement of the parties pursuant to CrR 3.3(f)(1)." CP at 168-72, 174. The other continuance was granted following Garcia's request, pursuant to CrR 3.3(f)(2). Garcia provides no information about how any of these continuances and the resulting extensions of the time for trial violated the rules. Accordingly, Garcia's challenge based on CrR 3.3 fails. RAP 10.10(c).

B. MATTERS OUTSIDE OR UNSUPPORTED BY THE APPELLATE RECORD

1. Challenges Based on Blue Helmet and Alleged False Testimony

Garcia claims he requested the blue motorcycle helmet be produced for DNA testing on November 22, 2021, and it was error for that request to be denied. He also claims that his counsel was ineffective for not requesting that the blue helmet be produced for his request. The record does not include Garcia's request to produce the helmet, his counsel's failure to request the helmet, or information about any proceedings on November 22, 2021. Because these claims involve facts outside the scope of the appellate record, they fail.[5] *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008) (the court "cannot review" claims that rely on evidence outside of the appellate record).

Garcia also refers to the blue helmet when he claims the elements of first degree robbery were not proven beyond a reasonable doubt. He argues that Ryan, Robertson, and Curtis admitted to lying about Garcia's involvement during their testimony and if the blue helmet was tested for DNA, it would prove that he was not the person wearing the blue helmet in the videos from the day of the robbery. Garcia claims that without the false testimony and with a showing that his

---

[5] Claims including facts outside of the record are more appropriate for a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

DNA is not on the blue helmet, the elements of his first degree robbery charges were not proven beyond a reasonable doubt.

This claim also fails; there is no information in the record that any of the witnesses lied during their testimony and, as discussed above, any evidence about DNA testing is similarly not in the record. *See Alvarado*, 164 Wn.2d at 569.

2. Admission of Evidence Based on Untimely Warrant Return

Garcia next claims that the evidence derived from the August 24 warrant to obtain video evidence was improper. He asserts that because the warrant return was not signed until weeks later in October 2020, more than 10 days after the warrant was issued, the warrant was not timely executed.

While Garcia is correct that the warrant return was signed over 10 days after the warrant was issued, the record does not support Garcia's claim that video evidence derived from the August 24 warrant was admitted and used against him. Indeed, when Garcia's counsel moved to exclude the evidence obtained from the August 24 warrant, the State responded that it did not intend to introduce that video evidence. Beyond stating the execution of the warrant was untimely, Garcia has not identified how his trial was affected by the mere extraction of the video evidence. Because the record does not support that the video evidence from the August 24 warrant was actually admitted or used against Garcia during trial, this claim fails. *See Alvarado*, 164 Wn.2d at 569.

3. Prosecutorial Misconduct

Garcia claims that the State committed prosecutorial misconduct by asking him questions that he "could not answer in fear of [a] mistrial." SAG at 3. Garcia asserts that he was being

forced to reveal he was in police custody when questioned about why he did not call Boyer to retrieve his red helmet.

Here, again, the record does not support Garcia's claim. The trial court did not permit the State to elicit that Garcia was unable to produce his helmet himself for evidence as a result of being in custody. In fact, the trial court excused the jury from the courtroom and cautioned the State against asking Garcia about his ability to produce the helmet to police. Because the record does not support Garcia's claim that the State's questioning elicited a prejudicial response from Garcia, this claim fails.

4. Comments About Prior Bad Acts

Finally, Garcia claims that he received ineffective assistance of counsel when his counsel "ask[ed] questions in front of [the] jury about bad acts." SAG at 6. Garcia points to 1 VRP at 69-70 for this assertion. However, the specific portion of the transcript that Garcia references was a pretrial discussion about motions in limine. The discussion did not occur in the jury's presence. The record does not reflect that any prior bad acts by Garcia were revealed to the jury as a result of this conversation. The record presented for consideration does not support Garcia's claim; accordingly, it fails.

CONCLUSION

We hold that Garcia has not met his burden to show his public trial right was implicated when the parties conducted a sidebar about an evidentiary issue. Additionally, we determine that Garcia's SAG claims fail. We affirm Garcia's convictions.

15

No. 56819-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

LEE, P.J.

CHE, J.